UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAYLOR CADLE, an individual,

      Plaintiff,

v.                           Case No.: 8:25-cv-02790-KKM-SPF

GRADY JUDD (in his individual capacity
and official capacity), MELISSA TURNAGE
(in her individual capacity), WILLIAM
RUSHING (in his individual capacity),
HENRY CADLE, et al.

      Defendants.

_____/

## MOTION TO DISMISS

COME NOW Defendants, GRADY JUDD, in his individual and official capacities, ("Sheriff Judd"), MELISSA TURNAGE, in her individual capacity ("Det. Turnage"), and WILLIAM RUSHING, in his individual capacity ("Det. Rushing"), (collectively, "the PCSO Defendants") and move to dismiss Plaintiff's Complaint, with prejudice, for violation of the applicable statutes of limitation and, as to Sheriff Judd in his individual capacity, for failure to state a claim on which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff filed her Complaint (ECF 01) on October 10, 2025; she then filed a second Complaint (ECF 02) on the same date with additional documents attached.

The Court dismissed the first complaint as moot (ECF 08). On October 15, 2025, the Court dismissed the second complaint as a shotgun pleading, and granted Plaintiff leave to file an amended complaint no later than October 29, 2025. (ECF 09). Plaintiff thereafter filed the operative pleading, her First Amended Complaint ("FAC"), on October 24, 2025. (ECF 14).

The FAC alleges ten total causes of action, including seven against the PCSO Defendants arising from the investigation conducted by PCSO following Plaintiff's report that she was being sexually assaulted by her adoptive guardian and biological great-uncle, Defendant Henry Cadle, between approximately 2013 to 2017. (FAC, ¶¶ 20-21).

Following Plaintiff's disclosure of the abuse to a church member, PCSO was called and Detective Turnage was assigned to investigate the case. (FAC, ¶¶ 24-25). Detective Turnage immediately interviewed both Plaintiff and Defendant Cadle regarding the alleged assault. (FAC, ¶¶ 26-28). After obtaining extraneous evidence such as cell phone records and viewing Plaintiff's August 3, 2016, forensic interview, Detective Turnage conducted a clarification interview with Plaintiff on August 16, 2016. (*Id*. at ¶¶ 29-31). A fourth interview with Plaintiff was conducted on December 14, 2016. (*Id*. at ¶32). Plaintiff characterizes this interview as an "interrogation" conducted without Miranda warnings and without the presence of an attorney. (*Id*. at ¶¶ 32, 34). Following that fourth interview, on

December 14, 2016, Detective Turnage completed a police report which indicated she did not have enough evidence to support a criminal charge against Defendant Cadle but did have probable cause to charge Plaintiff with providing false information during the investigation. (*Id*. at ¶ 42) A sworn probable cause affidavit averring that PCSO had probable cause to charge Plaintiff with providing false information to a law enforcement officer, in violation of § 837.055, Fla. Stat., was submitted on December 16, 2016. (*Id*. at 44). On February 22, 2017, Plaintiff and her adoptive mother, Lisa Cadle, signed a waiver of speedy trial conditioned on acceptance into a diversion program. (*Id*., ¶ 46). On May 27, 2017, Plaintiff pled guilty to giving false information to a Law Enforcement Officer. (*Id*., ¶49). She was placed on probation, and continued to reside with Defendant Cadle and Mrs. Cadle. (*Id*. at ¶ 50). Defendant Cadle resumed his abuse of Plaintiff. On July 25, 2017, Plaintiff was able to obtain video and photographic proof of his sexual abuse of her. (*Id*. at ¶54). She reported the abuse, and responding officers viewed the photographic and video evidence, collected additional physical evidence of the abuse, and arrested Defendant Cadle. He confessed his crimes the following day, July 26, 2017. (*Id*. at 54-56). Two days later, on July 28, 2017, the State's Attorney's Office for the Tenth Judicial Circuit filed a motion to withdraw Plaintiff's guilty plea and vacate her probation; a judge granted that motion and vacated her guilty plea and terminated her probation on July 31, 2017. (*Id*. at ¶¶ 58-59). On September

18, 2017, the State's Attorney's Office terminated and dismissed the charges against Plaintiff. (*Id.* at ¶ 60). Defendant Cadle was ultimately sentenced to 17 years in prison and remains in custody at the present time. (*Id.* at ¶ 63). Plaintiff herein brings seven charges against the PCSO Defendants, each pursuant to 42 U.S.C. § 1983:

1. **Malicious Prosecution** (against Det. Turnage, in her individual capacity)
2. **Substantive Due Process** (against Det. Turnage, individual capacity**)**
3. **Malicious Prosecution** (against Det. Rushing, in his individual capacity**)**
4. **Failure to Train, Supervise, Discipline** (against Sheriff Judd, in his official capacity)
5. **Failure to Train, Supervise, Discipline** (against Sheriff Judd, in his individual capacity)
6. **Policy, Practice, Custom** (against Sheriff Judd, in his official capacity)
7. **Policy, Practice, Custom** (against Sheriff Judd, in his individual capacity)

The PCSO Defendants move to dismiss each of the seven claims against them because the claims were filed outside the timeframe permitted by the applicable statutes of limitations. Additionally, Sheriff Judd moves to dismiss the claims against him in his individual capacity because Plaintiff has failed to state a claim in either count under Rule 12(b)(6).

## <u>LEGAL STANDARD</u>

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements

of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Twombly*, 550 U.S. at 570). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although the court must accept a plaintiff's allegations as true when considering a motion to dismiss, a plaintiff's unsupported conclusions of law or mixed fact and law, "unwarranted factual deductions," and "legal conclusions masquerading as facts" will not prevent a Rule 12(b)(6) dismissal. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## **ARGUMENT**

### I.    **The Court should dismiss each count because it is evident on the face of the claims in the FAC that Plaintiff's claims are barred by the statutes of limitation.**

While an affirmative defense does not generally provide grounds for dismissal of a pleading, a complaint may be dismissed when the existence of an affirmative defense "clearly appears on the face of the complaint." Quiller v. Barclays American/Credit, 727 F.2d 1067, 1069 (11th Cir. 1984).

a. **Claims brought under Section 1983 are governed by the statute of limitations for tort actions in the state in which the conduct occurred**.

Each of Plaintiff's claims against the PCSO Defendants is brought pursuant to 42 U.S.C. § 1983. "All constitutional claims brought under § 1983 are tort actions and, thus, are subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Boyd v. Warden*, 856 F.3d 853, 872 (11th Cir. 2017); *Hayward v. Lee Cty. Sheriff's Office*, No. 2:14-cv-244-FtM-29MRM, 2017 U.S. Dist. LEXIS 101953, at *6 (M.D. Fla. June 30, 2017) (The statute of limitations for a § 1983 cause of action is that "which the State provides for personal-injury torts." *citing Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)). "In Florida, the statute of limitations for personal injury actions is four years." )). *Hayward v. Lee Cty. Sheriff's Office*, No. 2:14-cv-244-FtM-29MRM, 2017 U.S. Dist. LEXIS 101953, at *6 (M.D. Fla. June 30, 2017) *citing Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) ("Florida's four-year statute of limitations applies to such claims of deprivations of rights under 42 U.S.C. § 1983.")

Plaintiff has pled that her guardians, Defendant Cadle and Lisa Cadle, had interests adverse to her. *See*, *e.g.*, FAC § 48. Arguably, Plaintiff might claim entitlement to the longer filing period provided by Florida's tolling statute, § 95.051, Fla. Stat. That section reads, in relevant part:

> The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian,

or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. **In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action**.

§ 95.051, Fla. Stat. (LexisNexis, Lexis Advance through the 2025 Regular Session.***)(emphasis added). Thus, even if Plaintiff is entitled to benefit from that tolling statute, she was required to file suit within seven years of when her claims accrued.

### i. Plaintiff's Claims for Malicious Prosecution accrued at the time her criminal case was dismissed.

While the statute of limitations is determined by state law, the date the claim accrues — i.e., the date the statute of limitations begins to run — is a matter of federal law. *See Neelley v. Walker*, 677 Fed. Appx. 532, 2017 WL 359647, at *2 (11th Cir. 2017). "Generally speaking, a federal cause of action under § 1983 accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action."" *Overstreet v. Georgia*, No. 21-14391, 2022 U.S. App. LEXIS 24827, at *11 (11th Cir. Sep. 2, 2022).

Plaintiff's claims in Counts One and Three for malicious prosecution accrued on the date her criminal case resolved in her favor. *See Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir. 1998) ("Having determined that the dismissal of drug charges against Uboh constituted favorable termination against the accused, we

resolve that Uboh's claims for malicious prosecution accrued on July 21, 1993, the date on which the district court entered its order of dismissal."); *see also Whiting v. Traylor, 85 F.3d 581, 585-86 (11th Cir. 1996)* ("Where a section 1983 plaintiff is seized following the institution of a prosecution ... and he seeks to recover damages for all the elements of the prosecution, he can properly wait until the prosecution terminates in his favor to bring his section 1983 claim which alleges that the seizure was unreasonable.") Plaintiff alleges that "[o]n July 31, 2017, a judge vacated Plaintiff's guilty plea and terminated her probation" (FAC., ¶ 59), after which, on September 18, 2017, "the Polk County State's Attorney's Office terminated and dismissed the charges against Plaintiff [...]". (*Id.*, ¶ 60).   Therefore, it is evident from the face of her complaint that the criminal case terminated in her favor—and her malicious prosecution claims accrued—no later than September 18, 2017. Thus, her claims for malicious prosecution must have been filed no later than September 18, 2024; the October 10, 2025, complaint asserting those claims is tardy by nearly thirteen months and, therefore, is due to be dismissed.

 ii.  **Plaintiff's Claim for violation of her Substantive Due Process rights accrued at the time of the allegedly coercive interview.**

Plaintiff's claim in Count Two for violation of Substantive Due Process is based upon alleged improper and coercive interrogation techniques used by Detective Turnage. Therefore, her claim accrued on the final date she was questioned by Detective Turnage. "The standard for when a § 1983 claim accrues

is well settled in our circuit. The statute of limitations on a section 1983 claim begins to run when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. *McGroarty v. Swearingen*, 977 F.3d 1302, 1309 (11th Cir. 2020)(cleaned up). Accrual does not focus on the state of the law but merely whether the Plaintiff knew "they were injured" and "who inflicted the injury." *Id*. at 1309.

Plaintiff's complaint alleges that the last date Detective Turnage questioned her was December 14, 2016 (FAC, ¶ 32); therefore, her claim accrued at that time. This timeframe is further supported since Plaintiff alleges that the improper interrogation techniques led to Plaintiff's charges in the criminal case which was initiated via the sworn probable cause affidavit filed on December 16, 2016 (FAC, ¶ 44) and, therefore, the incident giving rise to her claim must logically have occurred prior to the initiation of the case.

Therefore, it is evident from the face of her complaint that the criminal case terminated in her favor—and her malicious prosecution claims accrued—no later than September 18, 2017. Thus, her claims for malicious prosecution must have been filed no later than September 18, 2024; the October 10, 2025, complaint asserting those claims is tardy by nearly thirteen months and, therefore, is due to be dismissed.

### iii.  Plaintiff's claims in Counts Four and Five for Failure to Train accrued at the time the underlying conduct occurred.

Plaintiff's allegations against Sheriff Judd, both in his official and individual capacities, of failing to train, supervise, or discipline are predicated upon Detective Turnage's alleged "coercive interviewing tactics and charging of minors without probable cause, particularly sexual abuse complainants for 'false reporting'" in the absence of physical evidence. (FAC, ¶¶ 127-128; 139, 145). In the alternative, Plaintiff pleads that the failure to train "created or substantially increased a specific danger to Plaintiff" by, essentially, impeding the provision of protective services by other agencies to Plaintiff and prolonging her time in the presence of her abuser. (FAC, ¶¶ 131(a)-(d) and 143(a)-(d)).

The final interview upon which the first part of the claim is predicated occurred on December 14, 2016. (FAC, ¶ 32). The "signed and sworn affidavit" charging Plaintiff with providing false information to a law enforcement officer was submitted on December 16, 2016. (*Id*. at ¶ 44). She would have been emancipated from the presence of her abuser, Defendant Cadle, no later than his arrest for and admission to his crimes on July 26, 2017. (*Id*. at ¶ 56). Because her failure-to-train claims are based upon these events, they would have accrued no later than the latest of those dates, July 26, 2017. *See, e.g., Jackson v. City of Willacoochee*, No. CV 5:22-063, 2023 U.S. Dist. LEXIS 6014, at *5 (S.D. Ga. Jan. 12, 2023) ("Because Plaintiff's failure-to-train claim is based upon Officer Flanders's

falsification of information upon which the arrest warrant was based, **the claim accrued when Plaintiff learned of the falsification**." citing *Porter*, 461 F.3d at 1323.) Therefore, she was required to file suit within four years—and, in any event, no more than seven years—after that date, or July 26, 2024. *See* § 95.051(1)(h)(i), Fla. Stat. Because it is apparent on the face of the complaint that Plaintiff's claims in counts Four and Five are time-barred, they must be dismissed.

> ### iv. Plaintiff's Claims in Counts Six and Seven for Policy, Practice, Custom accrued on the date of the underlying constitutional injury.

Plaintiff's claims in Counts Six and Seven also accrued on the date of the underlying constitutional injury. Plaintiff alleges that Sheriff Judd and PCSO had a policy, practice, or custom of:

(a) "[E]ngaging in Unconstitutional and coercive interviews with victims to induce them to recant [...]"; (FAC, ¶ 153).

(b) Failing to properly investigate allegations of sexual abuse and interview suspects of sexual abuse; (*Id.* at ¶154 (a) and (b)).

(c) Failing to meet probable cause standards for criminal charges relating to sexual abuse and for charges against minors for false reporting; (*Id.* at ¶ 154 (c) and (d)).

These allegations each arise from the investigation of Plaintiff's reports that she was being sexually assaulted by Defendant Henry Cadle, or the investigation that

led to Plaintiff's arrest for giving a false statement to law enforcement. The former terminated no later than July 26, 2017, when Henry Cadle was arrested and admitted to the crimes while in police custody. (FAC at ¶ 56). The latter terminated with the filing of the sworn affidavit of probable cause in support of Plaintiff's arrest, on December 16, 2016, (FAC, ¶ 45), or, at the very latest, when her criminal charges were dismissed and terminated, on September 18, 2017. (FAC, ¶ 60). Therefore, her claim for injury due to polices, practices, or procedures accrued no later than September 18, 2017, and must have been filed no later than September 18, 2024.

Plaintiff's pleading in the alternative is also untimely. She alleges that, additionally or in the alternative, the policies, practices, or customs caused her injury by branding Plaintiff a liar making false reports and thereby "foreclosing or diminishing safety planning and removal options" resulting in "Plaintiff remaining in the custody and control of her abuser;" (FAC at ¶157 (a) and (b)), or by "[d]iscouraging or failing to require coordination with child-protective/ victim advocacy services despite the obvious, known risk of further abuse." (*Id*. at ¶157 (c)). Again, these alleged acts would necessarily have concluded when Plaintiff's abuser was arrested and physically taken into custody, thereby removing his physical access to and control of her, which occurred by July 26, 2017. (*Id*. at ¶ 56).

Therefore, regardless of whether Plaintiff's alternative theories of liability for policies, practices, and customs are read in the conjunctive or in the alternative, they clearly accrued no later than September 18, 2017 and, even assuming Plaintiff was entitled to the longer, seven-year time period provided by § 95.051, Fla. Stat., were required to have been filed no later than September 18, 2024. Because they were not, they must be dismissed.

## II.    Plaintiff's claim against Sheriff Judd in Count Five for Failure to Train, Supervise, or Discipline should be dismissed for failure to state a claim.

Plaintiff alleges that Sheriff Judd is the "final policy maker" that "supervised and trained the PCSO officers in carrying out their duties, including policing." FAC, ¶ 138. It appears Plaintiff alleges the deficient training centered on "untrained/ coercive interviewing and charging of minors with "false reporting" in the absence of physical evidence." Id. at ¶ 139. She alleges that Sheriff Judd had notice of the deficiency of such training because

- Detective Turnage had previous "documented performance issues and written reprimands…regarding serious lapses in SVU case handling;"

- The subsequent determination that Plaintiff was in fact innocent of false reporting in this case;

- Practices of charging juveniles with obstruction of justice at elevated rates;

- And "investigative omissions in warrant or charging submissions and failures to assess probable cause." *Id.* at ¶ 140 (a) – (d).

It is well established that a supervisory official cannot not be vicariously liable under § 1983 for the actions or omissions of his subordinates under a theory of *respondeat superior*. *Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014) (internal citations omitted). "To allege a claim of failure to train [Plaintiff] must identify what training was inadequate, how that specific training effected the underlying alleged civil rights deprivation, and how each specific individual was liable for providing that training." *Jones v. Lakeland Police Dep't*, No. 8:13-cv-3232-T-23TBM, 2014 U.S. Dist. LEXIS 52662, at *5-6 (M.D. Fla. Apr. 16, 2014); *See also City of Canton, Ohio v. Harris*, 489 U.S. 378,390-91(1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city[…].")

And to establish individual liability of a supervisor under § 1983, Plaintiff must allege facts establishing that the supervisor (1) personally participated in the alleged constitutional violation or that (2) there is a causal connection between the supervisor's actions and the alleged constitutional violation. *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013).

> "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the

supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Keith v. Dekalb Cty., 749 F.3d 1034, 1048 (11th Cir. 2014); see also *Frakes v. City of Boynton Beach*, No. 25-cv-80396-Can, 2025 U.S. Dist. LEXIS 205048, at *48 (S.D. Fla. Oct. 17, 2025) ("Without facts to show personal participation by Chief DeGiulio or a causal connection to the constitutional injury, Plaintiff cannot state a plausible claim § 1983.)

The Complaint does not allege that Sheriff Judd personally trained Detective Turnage or Det. Rushing nor participated in the alleged constitutional violations; therefore, Plaintiff must show that he "failed to correct a widespread pattern of constitutional violations or he must have adopted a custom or policy that deprived [Plaintiff]of [her] constitutional rights." *Keith v. Dekalb Cty.*, 749 F.3d 1034, 1048 (11th Cir. 2014). Plaintiff's allegations establish neither a widespread pattern of constitutional violations nor a causal connection between Sheriff Judd's actions and the violations alleged.

Plaintiff attempts to demonstrate widespread constitutional violations by vague allegations to Sheriff Judd's supposed "tough on crime rhetoric and criminalization of minors for making false statements." (FAC, ¶ 72). Not only does Plaintiff fail to connect how "tough on crime" rhetoric caused her violations, she fails to include examples of or reference to any specific rhetoric whatsoever. Nor

does she establish that Sheriff Judd propounded or adopted a custom or practice of improperly charging minors with making false statements. She alleges, without attribution, that "Polk County juveniles were charged with obstructing justice, which includes false reporting, at more than twice the State of Florida's average." (*Id.* at ¶ 73). In addition to failing to cite the source of this purported statistic, Plaintiff also fails to allege or provide any evidence that the underlying charges in those obstruction of justice cases were unsupported by the evidence, the result of insufficient training or discipline, or otherwise improper. Such vague reference to unsupported statistics (and an overly-broad category of crimes) fails to establish the necessary predicate to finding the existence of a custom or policy. *Cf. Buckler v. Israel*, 680 F. App'x 831, 835 (11th Cir. 2017) ("We first note that the sheer number of use of force incidents, without more, does not establish a widespread custom of acquiescence to the use of excessive force."); *citing Graham v. Connor*, 490 U.S. 386, 396 (1989); *Cf. Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[T]he number of complaints bears no relation to their validity.")

The FAC's allusion to two specific alleged instances of constitutional violations also fails to establish the necessary grounds for a custom or practice. Although the FAC alleges that an 11-year-old girl was accused by PCSO deputies "of lying about an attempted abduction" and "charged with filling a false police report," Plaintiff does not allege that charges were declined in that case, let alone

any facts purporting to show that the investigation was deficient or the charge was improper. (FAC, ¶ 75).  In Plaintiff's second example, the allegation that the State's Attorney's Office of the Tenth Judicial Circuit declined to prosecute a minor arrested by PCSO for aggravated assault is so dissimilar to the facts of this case as to be wholly irrelevant to the detectives' actions here. "The proffered evidence must demonstrate a custom of an identical constitutional violation, not one that is merely related." *Alimenti v. Town of Howey-In-The-Hills*, No. 5:20-cv-386-CEH-PRL, 2023 U.S. Dist. LEXIS 48845, at *44 (M.D. Fla. Mar. 22, 2023) *citing Pellegrino v. Wengert*, 703 F. App'x 892, 898 (11th Cir. 2017). And the mere fact that a prosecutor declines to issue charges or, after issuing charges, ultimately vacates or dismisses charges due to later-discovered evidence, as is the case here, is not determinative of whether the police properly investigated the case or possessed sufficient probable cause (or arguable probable cause) to make the arrest. Thus, the examples cited by Plaintiff are insufficient to meet the "extremely rigorous standard" for establishing a custom of widespread constitutional violations. "[T]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Keith v. Dekalb Cty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) citing *Cottone*, 326 F.3d at 1360 (alteration in original) (internal quotation marks omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued

duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation mark omitted).

Finally, to the extent the FAC is read to plead that the need for the allegedly deficient training was "so obvious" that the lack of training can be inferred from the alleged failures of the investigators in this case, "the Supreme Court of the United States has rejected this argument, instructing that "adequately trained officers occasionally make mistakes" and "the fact that they do says little about the training program . . . ."" *Stephens v. City of Tarrant*, No. 2:16-CV-274-KOB, 2017 U.S. Dist. LEXIS 100344, at *23 (N.D. Ala. June 28, 2017) *citing City of Canton v. Harris,* 489 U.S. 378, 391 (1989). Neither has the Eleventh Circuit "ever found an appropriate use for *Canton's* narrow, rare, hypothetical exception to the pattern-of-constitutional-violations requirement." *Id*. at *21, *citing Robinson v. Brassel*, 2017 U.S. Dist. LEXIS 85669, 2017 WL 2437265, at *12 (June 5, 2017). "Therefore, mere allegations of constitutional deprivation by officers, standing alone, do not support a claim against the City or the supervisors for failure to train or for deliberate indifference." *Id*. at *23. Approving of such an argument would essential allow for the imposition of *respondeat superior* liability, "which is a theory of liability that the Supreme Court has repeatedly refused to impose under section 1983 for municipal liability." *Id*.

Plaintiff has failed to state a claim against Sheriff Judd in his individual capacity under any viable theory of failure to train, discipline, or supervise the PCSO investigators.

### III.    Plaintiff's Claim in Count Seven for Policy, Practice, or Custom, fails to state a claim upon which relief can be granted against Sheriff Judd in his individual capacity.

Plaintiff's claim in Count VII bears substantial similarity and overlap to her claim in Count V, addressed above. This count again attempts to hold Sheriff Judd individually liable for the actions of his employees by alleging he was responsible for establishing, maintaining, and or ratifying a policy, practice, or custom of unconstitutional or coercive interviews of victims to induce them to recant and in filing charges without probable cause. (FAC, ¶165).  Essentially, she attempts to hold Sheriff Judd liable for the conduct of his employees by casting her allegations in the vague, conclusory language of the elements of the cause of action. But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, the "failures" alleged by Plaintiff in paragraph 166 – failing to (a) properly investigate allegations of sexual abuse […], (b) to properly interview suspects, including those suspected of sexual abuse […], (c) to meet probable cause standards for criminal charges related to sexual abuse […], (d) to meet probable cause standards for false reporting charges against minors, and (e) to provide

mandatory supervisory review before recommending charges against minor complainants—are made in a conclusory fashion without reference to any similar incidents which would establish such a policy or custom. Plaintiff's bare allegations, made "upon information and belief" that such policy existed, are insufficient to establish a policy for § 1983 purposes. *See Bowen v. Blais*, No. 6:23-cv-1088-JSS-DCI, 2024 U.S. Dist. LEXIS 94081, at *12-13 (M.D. Fla. May 28, 2024) (Where Plaintiff's complaint alleged "upon information and belief" Sheriff Lemma was aware of excessive force complaints against Deputy Blais "but took no or inadequate action, without factual allegations concerning other unlawful incidents involving the Sheriff and the existence of a policy or custom under 42 U.S.C. § 1983, "these types of 'conclusory allegations . . . are not admitted as true in a motion to dismiss.'" *citing S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996)).

As to Plaintiff's Failure to Discipline Claims, "a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985). However, Plaintiff has not successfully alleged substantially similar prior instances of deficient investigations and an accompanying failure to discipline, and the alleged single failure to sufficiently discipline Detective Turnage for the

conduct that is the basis of this action cannot suffice as the basis for Plaintiff's claim herein. See *Stephens v. City of Tarrant*, No. 2:16-CV-274-KOB, 2017 U.S. Dist. LEXIS 100344, at *33 (N.D. Ala. June 28, 2017)(Where the first Complaint referred only to the failure to investigate the single incident made the basis of this suit, and the court dismissed the failure to investigate and discipline claim because the single failure to investigate was insufficient for liability.") *see also Salvato v. Miley*, 790 F.3d 1286, 1297-98 (11th Cir. 2015) (holding that a single failure to investigate did not support liability under section 1983).

Nor has Plaintiff sufficiently staked out a ratification theory of liability against Sheriff Judd. When a plaintiff relies "not on a pattern of unconstitutional conduct, but on a single incident, [the plaintiff] must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision **and the decision's basis** before a court can hold the government liable on a ratification theory." *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015). "Only when the authorized policymakers approve a subordinate's decision **and the basis for it** have they ratified that decision." *Id.* (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (cleaned up).

In *Miley*, the plaintiff argued that the sheriff should be liable because he ratified his deputy's use of excessive force "in failing to conduct an adequate internal investigation after the shooting;" the Eleventh Circuit disagreed. *Id.* Here,

as in *Miley*, Sheriff Judd "did not 'review' any part of [Det. Turnage's] actions 'before they bec[a]me final,' much less 'approve' the 'decision and the basis for it." *Id.* (cleaned up); *see also Tompkins-Holmes v. Gualtieri*, No. 8:17-cv-52-T-33AEP, 2018 U.S. Dist. LEXIS 243045, at *41 (M.D. Fla. Mar. 16, 2018) ("Nothing suggests Sheriff Gualtieri reviewed the decision to shoot Tompkins-Holmes and approved the decision's basis before the shooting occurred."); *see also Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) ("The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it.")

## IV.     Sheriff Judd is Entitled to Qualified Immunity

Where the FAC attempts to hold Sheriff Judd liable in his personal capacity for alleged involvement in this case, Sheriff Judd is entitled to qualified immunity on such claims.

For a public official to avail himself of qualified immunity, he "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citations and quotation marks omitted). If the official satisfies this low hurdle, then the burden shifts to the plaintiff to show that the official violated clearly established constitutional law and that qualified immunity is not appropriate. *Id*. There is no dispute here that Sheriff Judd, as the "duly appointed agent of the PCSO," that Sheriff Judd was acting within the scope of his

discretionary authority when he allegedly created, encouraged, or ratified policies for PCSO or failed to train, supervise, or discipline PCSO deputies.

The plaintiff's burden, then, is to present (1) a prima facie case of a constitutional deprivation; and (2) that the right violated was clearly established at the time of the violation. *Trammell v. Thomason*, 335 Fed. Appx. 835, 840 (11th Cir. 2009). A "case directly on point" is not required for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. (cleaned up). In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Shuford v. Conway*, 666 Fed. App'x 811, 816-17 (11th Cir. 2016).

None of the allegations regarding Judd's alleged personal involvement in any of the events alleged in the FAC state a plausible constitutional violation. Because Plaintiff has failed to allege a prima facie case of a constitutional violation, and because Plaintiff has not cited any support to show such right was clearly established at the time of the alleged violations, Sheriff Judd is entitled to qualified immunity on the claims against him in his individual capacity.

## V.    Conclusion

The PCSO Defendants respectfully move this Court for an order dismissing all seven counts against them because the action was filed more than seven years after each claim accrued, in violation of the applicable statutes of limitation. Additionally, should the Court find any of the claims Sheriff Judd respectfully moves the Court to dismiss the claims against him in his individual capacity because Plaintiff has failed to state a claim in each count.

WHEREFORE, Defendants respectfully move this Honorable Court to dismiss Plaintiff's Complaint for violation of the statute of limitations and the counts against Sheriff Judd in his individual capacity for failure to state a claim, pursuant to Fed. R. Civ. P. 12(B)6.

I HEREBY CERTIFY that on the 19th day of December 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

Campbell Trohn Tamayo & Aranda, P.A.

By    /s/ Thomas L. Dudash
      **Hank Campbell**
      Fla. Bar. No. 434515
      h.campbell@cttalaw.com

{01372232-1 }                    24

i.morfin@cttalaw.com
**Thomas Dudash**
Fla. Bar No. 1044473
t.dudash@cttalaw.com
1701 South Florida Avenue
Lakeland, Florida 33803
P.O. Box 2369
Lakeland, FL 33806-2369
(863) 686-0043 (phone)
(863) 616-1445 (facsimile)
*Attorneys for PCSO Defendants*