## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| **CADLE** | | |
| | **Plaintiff,** | **Case No.: 8:25-cv-02790-KKM-SPF** |
| | **-v-** | |
| **JUDD, et al.** | | |
| | **Defendants.** | |

## PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

NOW COMES the Plaintiff, Taylor Cadle, by and through her undersigned counsel, and hereby submits this Response and Memorandum in opposition to the Defendants' Motion to Dismiss ("Motion") Plaintiff's First Amended Complaint ("FAC").

## INTRODUCTION

Defendants ask this Court to dismiss a civil-rights action arising from the unjust prosecution of a thirteen-year-old sexual-abuse victim premised on an illegal and coercive interrogation. Defendants ask this Court to ignore binding precedent, improperly apply a statute of repose, and impose on Plaintiff a Rule 56 standard for their Rule 12 motion. At bottom, the FAC sufficiently pleads a botched investigation led by a detective with a history strikingly similar failures in a department raised on Constitutionally offensive training that allowed a rapist to go free and a teenaged victim to be prosecuted before being returned to her abuser to be brutally raped again. Defendants' Motion must be denied.

## STATEMENT OF RELEVANT FACTS

1

Plaintiff was born on October 11, 2003. (FAC, ¶ 18). Plaintiff was twelve years old when she reported sexual abuse by her adoptive father, who was also her great uncle, Henry Cadle ("Cadle"). (*Id* at 16, 20-24). Rather than investigate, Polk County Sheriff's Office ("PCSO"), subjected Plaintiff to a coercive interrogation, without providing her Miranda warnings or access to counsel, all designed to induce a recantation. (*Id.* at ¶¶ 25-36, 40-41, 68, 101). During the December 14, 2016, interview, Detective Melissa Turnage ("Turnage") threatened Plaintiff with removal from her home and the destruction of her life and the lives of those around her. (*Id.* at ¶¶ 32-35). No interested adult was present, yet Plaintiff still was adamant that she was telling the truth. (*Id.* at ¶¶ 20-21, 31, 35, 40-41). On December 16, 2016, Turnage executed a sworn probable-cause affidavit, omitting material, exculpatory information, that was signed by Detective William Rushing ("Rushing") charging Plaintiff with a first-degree misdemeanor. (*Id.* at ¶¶ 41-44).

Foregoing counsel, Plaintiff's adoptive parents – Cadle and his wife – waived her Miranda rights and directed her to take a plea. (*Id.* at ¶¶ 47-51). On May 27, 2017, at the encouragement of guardians, whose interests were adverse to hers, Plaintiff pled guilty. (*Id*). On June 27, 2017, she was placed on probation and continued to reside with her abuser, who remained free, and his wife. (*Id.*).

Within one month of Plaintiff's conviction, Cadle raped her again. Plaintiff recorded the rape on her cell phone and called 911. (*Id.* at ¶¶ 53-54). Cadle was arrested, charged, and ultimately sentenced to 17 years in prison. (*Id.* at ¶¶ 56-60,

2

63). Plaintiff's conviction was vacated in July 2017 and the case against her dismissed by the State's Attorney on September 18, 2017. (*Id.*) As a result of Plaintiff's case, the State's Attorney created a policy that "requires administration be consulted prior to charging a juvenile that claims to be a victim of sexual abuse." *Id* at ¶ 67. In 2024, the PCSO admitted in a letter to a state senator that Turnage's interviews of Plaintiff contained "inappropriate questions and statements." (*Id.* at ¶ 65).

On October 10, 2025, within four years of reaching majority, Plaintiff filed her Complaint against Sheriff Grady Judd ("Judd"), Turnage, Rushing, and Cadle (ECF 02). On October 24, 2025, Plaintiff filed her FAC. (ECF 14).

## LEGAL STANDARD

In assessing the merits of the motion to dismiss, this Court is bound to accept the "factual allegations in the complaint as true and view them in the light most favorable to" the plaintiffs. *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Trent v. MERS, Inc.,* 618 F. Supp. 2d 1356, 1358–59 (M.D. Fla. 2007). "The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one." *Tibbetts Lumber Co., LLC v. Amerisure Ins. Co.*, 451 F. Supp. 3d 1295, 1300 (M.D. Fla. 2020).

## ARGUMENT
I.   **DEFENDANTS' MOTION IS PROCEDURALLY DEFECTIVE**

As a threshold matter, Defendants' Motion fails to comply with Local Rule 3.01(g), requiring the movant to (1) meet and confer in good faith in an effort to resolve the motion and (2) file a certifying statement evidencing same. *See Key West Condominium Association, Inc. v. Harbor Insurance Company*, Not Reported in Fed. Supp. (2021). This is required even when one party believes conferral will be futile or unduly burdensome. *See Parker v. Parker*, 829 Fed.Appx. 389 (2020). Courts in this District have denied motions for failure to follow Local Rule 3.01(g). *Price v. City of Edgewater*, 2019 U.S. Dist. LEXIS 126621, at *1-2 (M.D. Fla. July 30, 2019). Defendants did not meet and confer and did not file a certification evidencing same. Accordingly, Defendants' Motion should be denied.

## II. PLAINTIFF'S CLAIMS ARE TIMELY

Defendants contend that Plaintiff's claims are time-barred based on a purported seven-year limitations period. In fact, Defendants misstate federal accrual law, attempt to improperly apply a statute of repose, ignore state tolling principles, and disregard Plaintiff's well-pled discovery-rule allegations. At a minimum, Defendants' arguments raise fact issues appropriate only for a jury.

### A. Federal Law Governs Accrual

For § 1983 claims, Federal courts borrow the forum state's general personal-injury limitations period. In Florida, that period is four years. *Owens v. Okure*, 488 U.S. 235, 249–50 (1988). Accrual, however, is governed by federal, not state, law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Under federal law, a § 1983 claim accrues when the plaintiff knows or has reason to know (1) that she has been injured, and (2) who inflicted the injury. *Chappell*, 340 F.3d at 1283. Where the claim challenges the integrity of a criminal prosecution or the use of fabricated or coerced evidence, accrual is deferred until favorable termination. *McDonough v. Smith*, 588 U.S. 109, 119-20 (2019).

### B.  Repose Statutes Are Not Borrowed in § 1983 Actions

Defendants' time bar argument hinges not on Florida's statute of limitations but on a statute of repose clause found in Fla. Stat. § 95.051(1)(i) that says, "in any event, the action must be begun within seven years." Fla. Stat. § 95.051(1)(i). Defendants' conflation is fatal.

The 11th Circuit has expressly held that courts borrow only limitation periods, not state statutes of repose in federal civil rights actions pursuant to § 1988. *Moore v. Liberty National Life Insurance Co.*, 267 F.3d 1209, 1217–19 (11th Cir. 2001). Applying a state repose period would contradict Congress's directive to borrow "as little as is necessary" from state law. Id. Defendants do not cite a single case applying the seven-year repose statute and that is because none exist.

### C. Florida Courts Confirm that § 95.051's Seven-Year Clause is a Statute of Repose

Florida courts, including the Florida Supreme Court, have recognized Section 95.051's seven-year clause as a statute of repose that creates an absolute bar to filing under state law. *S.A.P. v. State, Dept. of Health and Rehabilitative Services*, 704 So.2d 583 (1997); *Westpark Preserve Homeowners Association, Inc. v. Pulte Home*

*Corporation*, 365 So.3d 391 (2023). That characterization defeats Defendants' argument that the seven-year outer limit applies to Plaintiff's federal claims; it is a repose provision and Eleventh Circuit precedent bars importing it into § 1983 actions. *Moore*, 267 F.3d at 1217-19.

### D. Tolling Applies Because Plaintiff Was a Minor with Only Adverse Guardians

FL ST § 95.051(1)(h), provides that the statute of limitations is tolled during the "minority of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem . . .has an interest adverse to the minor[.]" Fla. Stat. § 95.051(1)(h). The Florida Supreme Court has made clear that, "By tolling the statute of limitations during any period in which a child lacks a person who has a duty to act in the best interests of that child, section 95.051(1)(h) protects children from the danger that their claims will be time-barred before they can be brought." *D.H. v. Adept Cmty. Servs., Inc.*, 271 So. 3d 870, 878–79 (Fla. 2018).

The FAC alleges Plaintiff was born October 11, 2003, and lived under the control of her adoptive parents – one of whom was her abuser and the other who was married to Plaintiff's abuser. (FAC, ¶¶ 18, 21-24, 48-50). Her adoptive mother waived important legal rights for Plaintiff and pressured her to plead guilty. (FAC, ¶¶ 48-49). Plaintiff resided with her abuser until the time of his arrest and then continued residing with her adoptive mother, who remained aligned with Plaintiff's abuser, until after she reached the age of majority. (*Id.*, at ¶¶ 5, 16, 18, 20, 50). Plaintiff reached majority on October 11, 2021; she filed her complaint on

October 10, 2025. (*Id.*, at ¶¶ 5, 18; (ECF 1, 2). Accordingly, even if accrual occurred in 2016 or 2017, tolling renders her claims timely.

### E. The Discovery Rule Also Independently Delays Accrual

Under federal law, § 1983 claims are governed by the discovery rule in many contexts. *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117 (11th Cir. 2017). Accrual does not occur until the facts supporting the cause of action are or should be apparent to a reasonably prudent person. *Id*. Discovery-rule determinations are fact-intensive and rarely resolved at the pleading stage. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

Plaintiff was a minor sexual-abuse victim living with adverse guardians. The full scope of the constitutional violations—particularly the connection between her prosecution and PCSO's institutional policies, training failures, and disciplinary history—was not reasonably discoverable by Plaintiff until after she reached majority and subsequent investigations revealed systemic deficiencies. (FAC ¶¶ 65, 67, 123-131, 139-140). With Judd and PCSO taking no corrective action or acknowledging that Turnage's history included known shortcomings and misconduct, Plaintiff did not know the extent of constitutional violations until news media covered her case, records were revealed, and the PCSO responded to a state Senator's inquiry in 2024. (*Id.* at ¶¶ 6-8, 65, 69-71).

### III. PLAINTIFF HAS STATED A PLAUSIBLE INDIVIDUAL CAPACITY CLAIM FOR FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE AGAINST DEFENDANT JUDD

Defendants argue that Count V fails because the FAC is conclusory, fails to establish sufficient notice, relies on an impermissible "single-incident" theory, and does not allege Judd's personal participation or actual knowledge. Count V asserts supervisory liability against Judd for failure to train, supervise, and discipline detectives under his authority. This claim proceeds under supervisory liability, not *Monell*. Under Eleventh Circuit law, supervisory liability turns on whether a causal connection exists between the supervisor's acts or omissions and the constitutional injury, not on whether Plaintiff has pleaded a formal policy, custom, or statistically widespread practice. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). A supervisor may be held liable where the supervisor: (1) implemented or maintained practices reflecting deliberate indifference to constitutional rights; (2) failed to train or supervise in the face of an obvious risk of constitutional harm; or (3) failed to correct known misconduct. *Cottone*, 326 F.3dat 1360–61. Personal participation in the underlying investigation is not required so long as the supervisor's omissions causally contributed to the constitutional injury. *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).

### A. The FAC Pleads Actual and Constructive Notice of Recurring Investigative Failures

The FAC pleads specific, documented notice to Judd regarding Turnage's repeated deficiencies in handling child sexual-abuse investigations before and during Plaintiff's case**.** (FAC, ¶¶ 68, 72-76, 78-84, 155). The FAC alleges that Judd had actual notice before and during Plaintiff's case of Turnage's wrongdoings in

three different child sexual abuse cases: a Miranda violation leading to suppression of a confession (November 2015); failure to investigate victim disclosures (December 2015); and arresting the wrong suspect despite obvious mismatches (December 2016). (*Id.* at ¶¶ 78-81, 129). Despite this notice, Judd failed to retrain, supervise, or remove Turnage from handling child sex crime investigations, and she remained in that role through and after Plaintiff's matter, the PCSO later issuing a letter in 2024 admitting that Turnage's interview contained "inappropriate questions and statements." (*Id.* at ¶¶ 65-67). A supervisor's failure to discipline or correct known misconduct may establish the causal connection required for supervisory liability. *Cottone*, 326 F.3d at 1360–61. At the pleading stage, Plaintiff need not prove that prior discipline was inadequate; it is sufficient to allege that supervisory officials were aware of recurring deficiencies and failed to take reasonable steps to prevent foreseeable constitutional injury. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

As pled, Polk County juveniles were charged with obstruction at more than twice the State average. (FAC, ¶¶ 72-76, 78-84, 155). The FAC outlines multiple examples of Judd and PCSO criminalizing disclosures of child sexual abuse. (*Id.* at ¶¶ 6-8, 72-76, 78-84, 155). That the FAC does not disclose a specific source for these statistics, as Defendants note, is irrelevant (and unnecessary) and not a basis for dismissal. *Hoefling v. City of Miami*, 811 F.3d 1271, 1281–82 (11th Cir. 2016); *see also McDowell v. Brown*, 392 F.3d 1283, 1290–94 (11th Cir. 2004). Defendants would have

this Court believe that the only allegations Plaintiff advances on this issue are related to Judd's "tough on crime" rhetoric. Far from it. Plaintiff alleges that Judd controlled policing and the policies controlling policing in Polk County. Each and every omission or act of misconduct outlined in the FAC was known to, and explicitly or implicitly authorized by, Judd. (FAC, ¶¶ 6-8, 69-76, 78-84, 155).

When read together with the FAC's allegations of validated disciplinary actions and supervisory guidance concerning Detective Turnage's mishandling of child-sexual-abuse investigations known to her supervisor Judd, the juvenile-charging data plausibly supports an inference that Judd had constructive notice of recurring investigative failures that violated minors' rights and failed to take reasonable corrective action. (*Id.* at ¶¶ 6-8, 72-76, 78-84, 155).

Further, a pattern of identical constitutional violations is not required where the need for training, supervision, or discipline is so obvious that failure to act is likely to result in constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Connick v. Thompson*, 563 U.S. 51, 61–63 (2011). Where the risk of constitutional harm is obvious, deliberate indifference may be inferred even absent proof of actual knowledge of the specific incident. *Cottone*, 326 F.3d at 1360–61; *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

Charging decisions involving minor sexual-abuse victims present a uniquely high-risk context. The risk that untrained or unsupervised detectives would criminalize child victims rather than protect them was obvious, and the

FAC plausibly alleges deliberate indifference through Judd's failure to correct known investigative deficiencies. (FAC ¶¶ 52, 69-71, 78-84, 126, 130). Requiring actual, case-specific knowledge would improperly collapse supervisory liability into personal participation and render the deliberate-indifference doctrine meaningless. *Doe*, 604 F.3d at 1266.

Finally, the FAC does not allege a generalized or abstract failure to train, it pleads the absence of and need for specific, basic safeguards and training that are critical in the uniquely high-risk context of investigating and charging minor sexual-abuse complainants. (FAC ¶¶ 123–131, 139–140). During the relevant period, PCSO lacked adequate training and supervision on a whole host of critical (and basic) subjects when it comes to investigating child sexual abuse cases. (*Id*. at ¶¶ 52, 69-71, 78-84, 126, 130). The absence of these safeguards created an obvious risk that child victims would be criminalized based on subjective disbelief, coercive questioning, or incomplete investigations rather than evidence of falsity. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The FAC alleges that Plaintiff was subjected to an "investigation" that lacked the very safeguards Judd failed to implement in other cases. (FAC, ¶¶ 24–36, 40–45, 46–52, 59–61, 126–131, 151–161). Had Judd implemented basic training and supervisory safeguards, the constitutional violations Plaintiff suffered would have been prevented.

### B. The FAC Establishes a Plausible Causal Connection

Supervisory liability under § 1983 requires a plausible causal connection between the supervisor's conduct and the constitutional injury. *Stalley v. Cumbie*, 586 F.Supp.3d 1211 (2002). That connection may be established where a supervisor's failure to train, supervise, or discipline subordinates in the face of known or obvious risks foreseeably results in constitutional harm. *Id*. In § 1983 actions, causation means that a defendant is responsible for the natural consequences of his actions or omissions. *A.P. v. Feaver*, 2004 WL 7340516, at *11 (S.D. Fla. Mar. 8, 2004).

The FAC alleges that Judd had documented notice of Turnage's recurring deficiencies in handling child-sexual-abuse investigations through written guidance and formal reprimands issued in 2015 and 2016, yet failed to retrain, reassign, or discipline her. Those failures permitted continued investigative practices without safeguards that foreseeably resulted in Plaintiff being wrongly prosecuted without probable cause. (FAC at ¶¶ 65, 67, 72–84, 123–131, 139–140, 151–161, 163–170). These allegations plausibly establish that Judd's omissions were a moving force behind Plaintiff's injuries.

### C. Defendants' Arguments Do Not Warrant Dismissal

Defendants' reliance on *Keith v. DeKalb County* is not appropriate in this instance. 749 F.3d 1034 (11th Cir. 2014). First, *Keith* was decided at summary judgment**,** not at the pleading stage. *Id*. at 1048–49. Second, *Keith* addressed municipal liability, not supervisory liability.

Further, and as set forth *supra*, here the FAC pleads validated disciplinary events, recurring investigative failures, and inaction that plausibly link Judd's omissions to Plaintiff's harm. (FAC ¶¶ 72–76, 78–81, 82–84, 155). As alleged in the FAC, Judd was indeed ultimately responsible for, and therefore personally participated in, the training offered to Turnage and other PCSO deputies. (*Id*. at ¶¶6-8, 68-72). Supervisory liability does not require Judd's personal participation in the investigation or contemporaneous knowledge of Plaintiff's case.

## IV.    PLAINTIFF HAS STATED A PLAUSIBLE POLICY, PRACTICE, OR CUSTOM CLAIM AGAINST DEFENDANT JUDD

Defendants move to dismiss Count VII on the grounds that Plaintiff allegedly fails to plead an individual capacity liability against Judd for policy, custom, or practice and relies on isolated incidents, unsourced statistics, and conclusory assertions. These arguments mischaracterize the FAC and misunderstand the theory of liability asserted. Count VII seeks to hold Judd liable in his individual capacity for his own conduct as a final policymaker in creating, maintaining, and enforcing investigative and charging practices that posed an obvious risk of constitutional harm to minor sexual abuse complainants that foreseeably caused Plaintiff's injuries.

The Eleventh Circuit has long recognized that a supervisor or policymaker may be held individually liable under § 1983 where he personally establishes, enforces, or knowingly maintains unconstitutional policies or practices with deliberate indifference to known or obvious risks. *Gonzalez v. Reno*, 325 F.3d 1228,

1234–35 (11th Cir. 2003). Read as a whole, the FAC plausibly alleges such conduct here.

### A. Count VII is Not Respondeat Superior

Plaintiff does not rely on respondeat superior, nor does she attempt to impose municipal liability through Count VII, that function is served by Count VI. Instead, Count VII alleges that Sheriff Judd himself—acting as the final policymaker for PCSO—affirmatively maintained and enforced investigative and charging practices that criminalized juvenile sexual-abuse complainants without adequate safeguards, despite notice of obvious risks and recurring failures. Liability in this count flows from Judd's own decisions and omissions, not merely from the acts of subordinates.

### B. The FAC Pleads Defendant Judd's Personal Policymaker Conduct Through Specific, Interlocking Facts

The FAC alleges that Plaintiff was subjected to coercive investigative tactics and ultimately charged with making a false statement despite the absence of probable cause. (FAC ¶¶ 72–76, 78–81, 82–84, 155). These events did not occur in a vacuum. Plaintiff alleges that they resulted from practices affirmatively maintained by Judd as policymaker, including the absence of safeguards designed to prevent criminalizing child victims. (*Id*. at ¶¶6-8, 69-76).

The FAC also alleges that prior and contemporaneous to Plaintiff's case, Judd had actual or constructive notice of recurring investigative failures in similar child-victim investigations involving Turnage, including written guidance in

2015 and 2016 without any actual or appropriate discipline. (*Id.* at ¶¶ 77-82.) Despite these findings, Judd and the PCSO failed to retrain, reassign, or meaningfully discipline Turnage and continued assigning her to investigations involving vulnerable minors. (*Id.*) A policymaker's decision to maintain existing practices in the face of validated misconduct constitutes personal conduct sufficient for individual-capacity liability. *Harper*, 592 F.3d at 1236.

Lastly, the FAC alleges statistical evidence and concrete examples of violations in other cases. *See supra* § III(A); (FAC ¶ 73). In Count VII, these allegations are not offered to prove municipal custom per se, but to establish notice and obvious risk to Judd personally—facts that bear directly on deliberate indifference.

### C. Deliberate Indifference Through Policymaker Maintenance of Obvious Risk Practices Failures to Train, Supervise, and Discipline

The FAC alleges that Judd acted with deliberate indifference by maintaining investigative and charging practices where the risk of constitutional harm to minors was obvious. PCSO lacked adequate training and supervision on a whole host of critical (and basic) subjects when it comes to investigating child sexual abuse cases. (FAC ¶¶ 24–36, 40–45, 46–52, 59–61, 126–131, 151–161). The FAC further alleges that PCSO maintained investigative and charging practices affecting juvenile sexual abuse complainants without basic institutional safeguards. (*Id.*) This is a high-risk context where the danger of constitutional harm to minors is obvious, making the need for safeguards apparent even absent

15

a long list of identical prior violations. *Canton*, 489 U.S. at 390. Plaintiff alleges not just the failure to discipline in her case, but an institutional pattern of non-correction following similar failures and structural omissions leading to foreseeable unconstitutional outcomes.

### D. Tolerance, Delayed Acknowledgment and Policymaker Endorsement

Defendants argue Plaintiff has not adequately pled ratification because the FAC does not allege that Judd expressly approved every investigative step taken in Plaintiff's case. That argument misunderstands the claim. Plaintiff does not allege case-specific approval; she alleges policymaker tolerance and endorsement through inaction.

Critically, the FAC alleges that Judd and PCSO did not contemporaneously acknowledge wrongdoing despite other institutional actors doing so. (FAC ¶¶ 65, 77, 155, 159–161). Even years after the fact, Judd and PCSO hedged, defending Turnage's interview as thorough while admitting it was also "inappropriate[.]" (*Id*. at ¶ 65). These allegations support an inference that Judd chose to maintain existing practices rather than correct them.

The FAC also pleads subsequent institutional action by the State's Attorney's Office in requiring higher-level approval prior to charging minor sexual abuse complainants with false statement. (FAC, ¶¶ 24–36, 40–45, 46–52, 59–61, 126–131, 151–161). While this policy shift does not constitute a standalone "admission," it is circumstantial evidence that the risk Plaintiff suffered was real,

known and/or knowable, and serious enough to require formal safeguards reinforcing the allegation that Judd's prior maintenance of the challenged practices posed an obvious constitutional danger. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986). The FAC plausibly alleges that Judd allowed the relevant practices to continue without timely correction, resisted acknowledging wrongdoing, and failed to recognize the need for safeguards.

### E.  Moving Force Causation Is Plausibly Alleged

Finally, the FAC plausibly alleges the causal connection between Judd's conduct as a policymaker and Plaintiff's injuries. (FAC, ¶¶ 83-84). Plaintiff alleges that Judd's maintenance of deficient training, supervision, and corrective discipline in a high-risk investigative context – despite notice and obvious risk – foreseeably resulted in the constitutional violations alleged. At the pleading stage, that is sufficient. Whether Defendants can rebut causation is a matter for discovery, and Defendants' motion should be denied as to Count VII.

At the time of Plaintiff's prosecution, it was clearly established that a sheriff acting as final policymaker could be held individually liable for maintaining investigative or charging practices that posed an obvious risk of constitutional harm, even absent personal participation in the underlying investigation. *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003); *Harper v. Lawrence County*, 592 F.3d 1227, 1236 (11th Cir. 2010); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). A reasonable official in Judd's position would have understood that maintaining practices that

criminalize juvenile sexual-abuse complainants without safeguards violated clearly established constitutional norms.

## V. DEFENDANT JUDD IS NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants assert that Judd is entitled to qualified immunity on Plaintiff's § 1983 claims because Plaintiff allegedly fails to plead a constitutional violation and causation, and fails to show that Judd had notice or personal involvement. Each premise is incorrect. At the motion-to-dismiss stage, qualified immunity does not bar Plaintiff's claims.

### A. The Complaint Plausibly Alleges Constitutional Violations

For individual-capacity claims, qualified immunity applies only if (1) no constitutional violation is alleged, or (2) the constitutional right was not clearly established at the time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The FAC plausibly alleges multiple constitutional violations, including: initiation and continuation of a prosecution without probable cause and coercive investigative practices that violated Plaintiff's established substantive and procedural due-process rights.

### B. Supervisory Liability Was Clearly Established

Defendants argue that Judd lacked notice or personal involvement and therefore cannot be held liable. That argument misunderstands supervisory liability law and the qualified-immunity inquiry. At the time of Plaintiff's injury, it was clearly established that a supervisor may be held liable under § 1983 where his failure to train, supervise, or discipline subordinates causes constitutional

injury, even without personal participation in the constitutional violation. *Cottone*, 326 F.3d at 1360–61.

For the reasons outlined in § III, and in particular § III(A), Plaintiff has sufficiently pled supervisory liability at the pleadings stage.

### C. The Rights At Issue Were Clearly Established

To establish violation of a clearly established constitutional right, "[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendant[] that [his] alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Fair warning is commonly established by precedent from the Supreme Court, the Circuit Court, or the highest state court in which the case arose. *See Terre v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012).

When Plaintiff was coercively interrogated by Turnage and charged with making a false statement, it was beyond debate that law enforcement could not initiate criminal charges without probable cause, knowingly or recklessly omit exculpatory facts to secure legal process, or coerce statements through threats that overbear a child's will. *See Malley v. Briggs*, 475 U.S. 335, 344–45 (1986); *Kelly v. Curtis*, 21 F.3d 1544, 1554–55 (11th Cir. 1994); *Williams v. Aguirre*, 965 F.3d 1147, 1157–61 (11th Cir. 2020); and *In re Gault*, 387 U.S. 1, 45–55 (1967). Moreover, the deliberate coercion of a child victim with threats of foster care and prosecution—followed by baseless charges—constitutes an egregious abuse of official power

that shocks the conscience and violates substantive due process under the Fourteenth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–49 (1998); *Rochin v. California*, 342 U.S. 165, 172–74 (1952); *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963); *Tinker v. Beasley*, 429 F.3d 1324, 1328–29 (11th Cir. 2005). These violations are precisely what the FAC alleges and any reasonable official would have understood the obvious constitutional risk.

### D. Causation Is Adequately Alleged to Defeat Qualified Immunity

Defendants further argue that Plaintiff fails to allege causation as to Judd. That argument is incorrect. Supervisory causation is established where a supervisor's omissions foreseeably lead to constitutional harm. *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). For the reasons outlined in § III, and in particular § III(B), Plaintiff has pled causation sufficient to defeat Qualified Immunity at the pleadings stage.

## VI.    DISMISSAL IF ANY, SHOULD BE WITHOUT PREJUDICE AND LEAVE TO AMEND

To the extent the Court finds any aspect of Plaintiff's Complaint deficient, any dismissal should be without prejudice and with leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). No substantial reason exists here to deny leave. *Rivas v. The Bank of New York Mellon*, 676 F. App'x 926, 931 (11th Cir. 2017).

## <u>CONCLUSION</u>

Based on the above cited authorities and argument, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

Dated: January 9, 2026                    Respectfully Submitted,

**/s/ Brenda Harkavy**
Brenda Harkavy, Esq. (SBN: 332405)
(*pro hac vice*)
M. Stewart Ryan, Esq. (SBN: 313516)
(*pro hac vice*)
Alexandria MacMaster, Esq.(SBN:316826)
(*pro hac vice*)
Laffey Bucci D'Andrea Reich & Ryan
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
P: 215-399-9255
bharkavy@laffeybucci.com
sryan@laffeybucci.com
amacmaster@laffeybucci.com
CVSRteam@laffeybucci.com

**/s/ Troy Rafferty**
Troy A. Rafferty, Esq. (SBN: #24120)
Madeline E. Pendley, Esq. (SBN:#1019746)
Rafferty, Domnick, Cunningham & Yaffa
815 S. Palafox St., 3rd Floor
Pensacola, FL 32502
P: 850-208-0826
troy@pbglaw.com
madeline@pbglaw.com