## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TAYLOR CADLE,**

**Plaintiff,**

**–v–**

**GRADY JUDD (in his individual capacity and official capacity), MELISSA TURNAGE (in her individual capacity), WILLIAM RUSHING (in his individual capacity), and HENRY CADLE**

**Defendants.**

**Case No.: 8:25-cv-02790-KKM-SPF**

## PLAINTIFF TAYLOR CADLE'S MOTION FOR DEFAULT JUDGMENT AS TO LIABILITY AGAINST DEFENDANT HENRY CADLE WITH DAMAGES RESERVED FOR JURY TRIAL AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Taylor Cadle ("Plaintiff"), by and through her undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 55(b)(2) and Middle District of Florida Local Rule 1.10(c), for entry of default judgment as to *liability only* against Defendant Henry Cadle ("Defendant Cadle"), on Counts VIII, IX, and X of Plaintiff's First Amended Complaint, with the determination and award of damages reserved for the jury trial in this action. This approach is necessary because the damages Plaintiff

1

seeks against Defendant Cadle are indivisible from the damages sought against the non-defaulting Defendants. Plaintiff will contend at trial that joint and several liability applies to both the state intentional tort claims, § 768.81(4), Fla. Stat., and the federal § 1983 claims under federal common law, and that the damages issues cannot properly be tried separately. Furthermore, judicial economy supports reserving the determination of damages until a jury is empaneled to hear all issues in this case, including the liability of the non-defaulting Defendants. In support thereof, Plaintiff states as follows:

## INTRODUCTION

1.      This case arises from the sexual abuse of Plaintiff by her adoptive father, Defendant Cadle, over a period of approximately four years beginning when Plaintiff was nine years old, and from the Polk County Sheriff's Office's ("PCSO") concurrent and subsequent failure to protect her. As alleged in Plaintiff's First Amended Complaint, when Plaintiff disclosed the abuse at twelve years old, the detective assigned to her case disbelieved her from the outset, subjected her to coercive interrogation, and charged her – a child sexual abuse victim – with making a false statement to a law enforcement officer, claiming that Plaintiff lied about the sexual abuse. Plaintiff was forced to plead guilty, ordered to write letters of apology to her abuser and the PCSO, and returned to Defendant Cadle's home, where the abuse resumed.

2.      Defendant Cadle has defaulted. His liability on the state-law tort claims (Counts VIII–X) is established by the well-pleaded allegations of the First Amended Complaint. Furthermore, having pled guilty to his offenses, Defendant Cadle has already admitted that there are no factual disputes as it relates to his conduct.

3.      This motion asks the Court to enter default judgment as to liability and reserve the determination of damages for the jury trial scheduled for April 2027, at which time the claims against all Defendants will be tried together. Defendant Cadle's liability is not in question; it is established by the well-pleaded allegations deemed admitted upon default. What must be deferred is the quantification of damages, because the injuries for which Plaintiff seeks damages from Defendant Cadle are indivisible from the injuries underlying the § 1983 claims against the PCSO Defendants.

4.      The First Amended Complaint alleges that the PCSO Defendants' misconduct proximately caused Plaintiff's continued exposure to the very abuse Defendant Cadle committed, meaning the same harm is at issue across all claims. Plaintiff will contend at trial that joint and several liability applies and that these damages are indivisible and cannot be apportioned. Because the apportionment of damages and the applicability of joint and several liability are issues to be resolved at or immediately before trial, the damages determination cannot properly be made in a separate proceeding against

Defendant Cadle alone. Judicial economy further supports this approach, as it makes little sense to have one factfinder assess damages against Defendant Cadle now and a different factfinder assess damages against the PCSO Defendants later. This is especially true given that Plaintiff would demand a trial by jury for both assessments. Therefore, both juries would be evaluating the same injuries, the same evidence, and the same witnesses.

5.    This approach is warranted because the damages Plaintiff seeks against Defendant Cadle are inextricable from the damages sought against the PCSO Defendants,  and a single proceeding is the most efficient way to ensure that one factfinder evaluates the full scope of Plaintiff's harms for all claims and Defendants.

## PROCEDURAL BACKGROUND

6.    On October 24, 2025, Plaintiff filed a First Amended Complaint [ECF. No. 14], asserting ten counts against four Defendants. Counts I through VII assert claims under 42 U.S.C. § 1983 against Defendant Sheriff Grady Judd, in his official and individual capacities as Sheriff and final policymaker of the Polk County Sheriff's Office ("PCSO"), and Defendants Detective Melissa Turnage and Detective William Rushing, in their individual capacities as PCSO law enforcement officers (collectively, the "PCSO Defendants"). Counts VIII (Sexual Battery), IX (Intentional Infliction of Emotional Distress), and X (Invasion of Privacy) assert state-law tort claims against Defendant Cadle.

7.     The Court exercises supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff has demanded a trial by jury on all issues so triable. (FAC ¶ 4.)

8.     As to the PCSO Defendants, Counts I and III assert Fourth Amendment malicious prosecution claims against Detectives Turnage and Rushing. Count I against Detective Turnage for issuing a sworn affidavit lacking probable cause and Count III against Detective Rushing for co-signing and affirming that affidavit, both of which resulted in Plaintiff's wrongful prosecution and conviction for giving false information to a law enforcement officer.

9.     Count II asserts a Fourteenth Amendment substantive due process claim against Detective Turnage for her coercive interrogation of a minor sexual abuse victim and for affirmatively creating and increasing the danger to Plaintiff by discrediting her report and causing her return to Defendant Cadle's custody.

10.    Counts IV and V assert failure to train, supervise, and discipline claims against Sheriff Judd in his official and individual capacities. Counts VI and VII assert policy, practice, and custom claims against Sheriff Judd in his official and individual capacities. Counts IV through VII also incorporate state-created danger claims under the Fourteenth Amendment, alleging that the PCSO's systemic failures affirmatively created or substantially increased the

5

danger to Plaintiff by discrediting her abuse report, undermining child-protective interventions, and ensuring her continued placement in the custody of Defendant Cadle. (FAC ¶¶ 131–32, 143–44, 157–58, 168–69.)

11.    All seven § 1983 counts seek damages for, among other things, the psychological harm Plaintiff suffered from being repeatedly required to recount her sexual abuse as a minor and then subjected to coercive and intimidating interrogation tactics designed to pressure her to recant her truthful disclosures, the severe emotional distress, humiliation, and reputational stigma of being wrongfully charged, prosecuted, and forced to plead guilty to a crime she did not commit for truthfully disclosing Defendant Cadle's sexual abuse, the trauma of being compelled by the PCSO Defendants' failures to take matters into her own hands as a child to prove her abuse (including surreptitiously photographing evidence during an active sexual assault) because law enforcement wrongfully prosecuted her, and the physical and psychological injuries from her unlawful prosecution and the continued sexual abuse that occurred after the PCSO Defendants' conduct left her unprotected and in the custody of Defendant Cadle. (FAC ¶¶ 97, 106, 120, 134.)

12.    A summons for Defendant Cadle was issued on December 9, 2025. Defendant Cadle was properly served with the Summons and First Amended Complaint on December 16, 2025, as reflected in the Proof of Service filed with this Court [ECF No. 45].

13.    Pursuant to Fed.R.Civ.P. 12(a)(1)(A)(i), Defendant Cadle's response to the First Amended Complaint was due on or before January 6, 2026, but as of February 3, 2026, counsel for Defendant Cadle had not appeared, nor had a responsive pleading or request for extension of time been filed by Defendant Cadle.

14.    Plaintiff filed an application for entry of default on February 3, 2026 [ECF No. 56], and the Clerk entered default against Defendant Cadle on February 4, 2026 pursuant to Fed. R. Civ. P. 55(a) [ECF No.57].

15.    The PCSO Defendants have appeared and are actively litigating this matter. The PCSO Defendants filed a Motion to Dismiss on December 19, 2025 [ECF No. 39], which remains pending. A Case Management and Scheduling Order was entered on January 25, 2026 [ECF No. 53], setting discovery due by August 20, 2026, and jury trial for the April 2027 trial calendar.

16.    Defendant Cadle is currently incarcerated. He was convicted of custodial sexual battery on a child 12–18 years of age for his sexual abuse of Plaintiff and sentenced to 17 years in prison. (FAC ¶ 63.) He has no counsel of record and has taken no action in this case.

## FACTUAL BACKGROUND

17.    The following facts are drawn from the well-plead allegations of the First Amended Complaint, which are deemed admitted by virtue of

7

Defendant Cadle's default. The Court is respectfully referred to the First Amended Complaint for the full factual record [ECF. No. 14]. Plaintiff summarizes the key facts here because they are essential to understanding why the damages in this case are indivisible across all Defendants.

18.    Plaintiff was adopted by Defendant Cadle, her paternal great uncle. (FAC ¶¶ 19–20.) Beginning when Plaintiff was approximately nine years old, Defendant Cadle sexually abused and raped her on countless occasions over a period of approximately four years, from 2013 through 2017. (FAC ¶ 21.)

19.    When Plaintiff was twelve years old, the abuse was reported to the Polk County Sheriff's Office (FAC ¶ 24.) Over the following months, Plaintiff gave four consistent and detailed accounts of Defendant Cadle's sexual abuse: to initial responding deputies and to Defendant Detective Turnage during a screening, in a recorded forensic interview, and again during a subsequent recorded interview on December 14, 2016. (FAC ¶¶ 24, 26, 29–30, 35.)

20.    Despite Plaintiff's consistent disclosures, Detective Turnage disbelieved Plaintiff from the outset, telling Defendant Cadle that Plaintiff had "made up these allegations." (FAC ¶ 27.) On December 14, 2016, Detective Turnage conducted a recorded interview of the then-thirteen-year-old Plaintiff without Miranda warnings or access to counsel, employing coercive tactics, threatening her with a return to foster care and warning that her family would

lose their home, car, and livelihood if she persisted in her claims. (FAC ¶¶ 32–34.)

21.    Throughout the investigation, Detective Turnage repeatedly challenged Plaintiff's account and accused her of lying. Each time, Plaintiff maintained the veracity of her disclosures. (FAC ¶¶ 31, 35, 40.) Despite Plaintiff's unwavering consistency across four separate interviews over five months, Detective Turnage submitted a sworn affidavit, co-signed by Defendant Detective Rushing, asserting probable cause to charge the thirteen-year-old sexual abuse victim with giving false information to a law enforcement officer. (FAC ¶ 44.) The Florida Department of Children and Families, relying on Detective Turnage's findings, closed its protective investigation. (FAC ¶ 45.)

22.    Without counsel, and on the advice of her adoptive mother, Defendant Cadle's wife, to "just get the case over with," Plaintiff waived her right to counsel and pled guilty to a crime she did not commit. (FAC ¶¶ 48–49.) One of the conditions of Plaintiff's probation required her to write letters of apology to Defendant Cadle, the man who had been raping her for years, and to the PCSO. (FAC ¶¶ 50–51.)

23.    Plaintiff remained in Defendant Cadle's custody and was returned to the home of her sexual abuser, where the abuse resumed. (FAC ¶ 50.)

24.    Less than one month after being forced to apologize to her abuser, Defendant Cadle raped Plaintiff again. (FAC ¶¶ 53–54.) This time, Plaintiff

surreptitiously photographed evidence during the assault and called 911 that same night. (FAC ¶¶ 54–55.) Defendant Cadle was arrested, admitted he was depicted in Plaintiff's photographs, and was charged with two counts of sexual battery, for both the July 2017 rape and the abuse Plaintiff had originally reported in 2016. (FAC ¶¶ 56–57.)

25.    Plaintiff's guilty plea was vacated, and the charges against her were dismissed, with the State Attorney's Office confirming she "was, in fact, truthful in the information she provided to law enforcement." (FAC ¶¶ 59–60.)

26.    The presiding judge in Defendant Cadle's criminal case found that "this child was a victim of the failure of the criminal justice system." (FAC ¶ 62.)

27.    Defendant Cadle pled no contest to custodial sexual battery on a child 12–18 years of age and was sentenced to 17 years in prison. (FAC ¶ 63.)

28.    As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer bodily injury, severe ongoing emotional distress, mental anguish, fright, revulsion, humiliation, loss of capacity for the enjoyment of life, and expenses for treatment and care, past, present, and future. (FAC ¶¶ 181, 186, 190.)

## LEGAL STANDARD

29.    Under Federal Rule of Civil Procedure 55, obtaining a default judgment is a two-step process. First, the Clerk enters default under Rule 55(a)

when a party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, after the clerk's entry of default, the party seeking relief applies to the Court for default judgment under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(2).

30.     A default judgment may be entered against a defendant who never appears or answers a complaint, for in such circumstances the case was never placed at issue. *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986). The plaintiff must provide a "sufficient basis in the pleadings for the judgment entered." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015); *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).

31.     Upon entry of a clerk's default, the well-plead factual allegations of the complaint are deemed admitted as to the defaulting defendant's liability. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). However, allegations relating to the amount of damages are not deemed admitted and must be proven. *Id.*

32.     Where the claim is not for a sum certain, Rule 55(b)(2) provides that "the court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: . . . (B) determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). The Rule thus vests broad discretion in the Court regarding the

procedures for determining damages, including the discretion to defer the damages determination to trial.

33.    Local Rule 1.10 also controls. Pursuant to Local Rule 1.10(b), Plaintiff, as directed by this Court, applied for Default. Pursuant to Local Rule 1.10(c), within thirty-five days after entry of a default, the party entitled to a default judgment must apply for the default judgment "or must file a paper identifying each unresolved issue, such as the liability of another defendant, necessary to entry of the default judgment." M.D. Fla. Local Rule 1.10(c). This Rule expressly contemplates those unresolved issues, including the liability of co-defendants, may bear on the scope of a default judgment. Here, Plaintiff has timely applied for default judgment as to liability and identifies the determination of damages as the unresolved issue that must await trial, for the reasons set forth below.

## <u>ARGUMENT</u>

## I.    **Defendant Cadle's Liability Is Established on Counts VIII, IX, and X.**

34.    By virtue of the Clerk's entry of default, Defendant Cadle has admitted the well-pleaded factual allegations of the First Amended Complaint. As set forth in the Legal Standard above, these admissions establish liability but do not extend to the amount of damages. Moreover, Defendant Cadle's no-contest plea to custodial sexual battery on a child 12–18 years of age for the

same conduct underlying these civil claims, resulting in a 17-year prison sentence (FAC ¶ 63), is the functional equivalent of summary judgment on the issue of liability, and any argument that he is not factually liable would be meritless.

### A.    Count VIII: Sexual Battery (Rape)

35.    Section 794.011(1)(h), Florida Statutes, defines "sexual battery" as oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object. *See Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). To establish civil liability for sexual battery, Plaintiff must show that the defendant committed an intentional, nonconsensual sexual act upon the plaintiff that proximately caused damages.

36.    The admitted allegations satisfy each element. The First Amended Complaint establishes that between approximately 2013 and 2017, while Plaintiff was a minor between the ages of nine and thirteen, Defendant sexually abused Plaintiff and raped her on countless occasions, including vaginal penetration and other sexual contact, in his vehicle and elsewhere. (FAC ¶¶ 21–22, 24, 26, 29–30, 54, 179.)

37.    As a minor, Plaintiff was incapable of consenting to the sexual abuse. (FAC ¶ 177.) Defendant Cadle knew Plaintiff was a minor and could not consent. (FAC ¶ 178.) The admitted facts further establish that Defendant Cadle's sexual battery directly and proximately caused bodily injury, severe

emotional and psychological harm, loss of enjoyment of life, and other damages. (FAC ¶¶ 180–181.)

38.    Because these well-pleaded facts are deemed admitted upon default, the admitted allegations establish Defendant Cadle's liability for sexual battery under § 794.011(1)(h).

### B.    Count IX: Intentional Infliction of Emotional Distress

39.    Under Florida law, a claim for intentional infliction of emotional distress requires (1) deliberate or reckless conduct by the defendant, (2) the conduct is outrageous, such that goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community, (3) that the conduct caused emotional distress, and (4) that the emotional distress was severe. *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).

40.    The admitted allegations satisfy each element. The First Amended Complaint establishes that Defendant Cadle intentionally and repeatedly sexually abused and raped a child in his custody over a period of approximately four years. (FAC ¶¶ 21–22, 24, 26, 29–30, 54, 183.) The repeated sexual abuse and rape of a minor by a custodial caregiver constitutes conduct that is, by definition, beyond all bounds of decency and utterly intolerable. (FAC ¶ 184.) The admitted facts further establish that Defendant Cadle's conduct directly

and proximately caused severe emotional distress, mental anguish, humiliation, and loss of enjoyment of life. (FAC ¶¶ 185–186.)

41.    Because these well-pleaded facts are deemed admitted upon default, the admitted allegations establish Defendant Cadle's liability for intentional infliction of emotional distress.

### C.    Count X: Invasion of Privacy

42.    Under Florida law, the tort of intrusion upon seclusion requires (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs, (3) that would be highly offensive to a reasonable person. *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). The admitted allegations satisfy each element.

43.    The First Amended Complaint establishes that Defendant Cadle's unwanted and offensive sexual contact constituted an intentional physical intrusion upon Plaintiff's bodily solitude, autonomy, and privacy. (FAC ¶¶ 21–22, 24, 26, 29–30, 54, 188.) The repeated sexual assault of a minor child by a custodial caregiver is, as a matter of law, an intrusion highly offensive to any reasonable person. The admitted facts further establish that the invasion directly and proximately caused bodily injury, emotional distress, and associated damages. (FAC ¶¶ 189–190.) Because these well-pleaded facts are deemed admitted upon default, the admitted allegations establish Defendant Cadle's liability for invasion of privacy.

44.    Because these well-pleaded facts are deemed admitted upon default, the Court should enter judgment establishing Defendant Cadle's liability on Counts VIII, IX, and X.

## II.    The Court Should Enter Default Judgment as to Liability Only and Reserve the Determination of Damages for Trial.

45.    Rule 55(b)(2) vests the Court with broad discretion over the form and timing of default judgments. The Rule expressly authorizes the Court to "conduct hearings" and to take such action as it deems necessary to enter or effectuate judgment, including bifurcating liability and damages. Fed. R. Civ. P. 55(b)(2); *see Loos v. Club Paris, LLC*, 684 F. Supp. 2d 1328, 1332 (M.D. Fla. 2010) (entering default judgment on liability and granting plaintiff's request for jury trial on unliquidated damages). Courts regularly exercise this discretion to enter default judgment as to liability while reserving damages for later proceedings, particularly where damages are indivisible from damages against non-defaulting co-defendants. As Plaintiff has chosen to exercise her rights to a trial by jury as to damages, judicial economy also dictates the entry of default judgment against Defendant Cadle while not assessing damages until a joint trial with the non-defaulting Defendants.

46.    In multi-defendant cases, the preferred practice in this District is for the court to withhold granting default judgment until resolution of the action on the merits against the remaining defendants. *Essex Ins. Co. v. Moore,*

No. 6:11-cv-515-Orl-19KRS, 2011 WL 3235685, at *1 (M.D. Fla. July 28, 2011);

*see also Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp*., No. 6:11-cv-

1054-Orl-28DAB, 2011 WL 6752561, at *5 (M.D. Fla. Nov. 16, 2011) (same);

*Atrium 5 Ltd. v. Hossain*, No. 6:16-cv-1964-Orl-22TBS, 2017 WL 2562543, at

*2 (M.D. Fla. May 26, 2017) (same). Plaintiff's request here is fully consistent

with this preferred practice, however Plaintiff is not asking this Court to

withhold default judgment entirely. Plaintiff is asking the Court to grant

default judgment as to liability, which is not in dispute, and reserve only the

determination of damages for a single jury trial at which all remaining claims

against all Defendants will be tried together.

## III.    The Damages Are Indivisible, Cannot Be Tried Separately, and Must Be Determined In A Single Proceeding.

47.    The damages in this case are indivisible. The First Amended

Complaint alleges that the PCSO Defendants' misconduct and Defendant

Cadle's abuse combined to produce a single course of harm to Plaintiff that

cannot be divided between Defendants. The § 1983 claims against the PCSO

Defendants (Counts I–VII) and the state-law tort claims against Defendant

Cadle (Counts VIII–X) arise from an interlocking set of facts, and the damages

sought overlap substantially.

48.    The First Amended Complaint specifically alleges that the PCSO

Defendants' misconduct "left Plaintiff at the behest of her guardian and

adoptive father, Defendant Cadle, enabling Defendant Cadle to thereafter subject Plaintiff to further horrific sexual abuse." (FAC ¶ 52.) The § 1983 claims seek damages for "physical and psychological injury from the subsequent sexual assaults that occurred after Defendant Detective Turnage's coercive conduct left her unprotected." (FAC ¶¶ 97, 106, 120, 134.) The state-law claims against Defendant Cadle seek damages for the same underlying abuse. (FAC ¶¶ 180–81, 185–86, 189–90.) The injuries overlap because the First Amended Complaint alleges they share a common cause.

49.     Moreover, Plaintiff's damages cannot be neatly attributed to one set of Defendants or the other. The psychological injuries Plaintiff suffered from Defendant Cadle's abuse are inseparable from the injuries she suffered as a result of the PCSO Defendants' conduct, including being disbelieved, coercively interrogated, charged with a crime for reporting her own rape, forced to plead guilty without counsel, and compelled to write letters of apology to her abuser and the very agency that failed to protect her. A jury assessing Plaintiff's damages will necessarily evaluate these injuries as a whole. Determining damages against Defendant Cadle alone, before trial, would require separating harms that cannot be separated.

50.     From the perspective of judicial economy, it makes little sense to empanel one jury to assess damages against Defendant Cadle now and then a different jury to assess liability and damages against the PCSO Defendants

later, when both juries would be evaluating the same injuries, the same evidence, and the same witnesses. A single proceeding ensures that the full scope of Plaintiff's harm across all claims and all Defendants is determined by one jury.

51.    Plaintiff will contend at trial that joint and several liability applies to all claims in this case. As to the state-law intentional tort claims against Defendant Cadle (Counts VIII–X), Florida's comparative fault statute does not apply to intentional torts, and joint and several liability is preserved. § 768.81(4), Fla. Stat.; *Merrill Crossings Assocs. v. McDonald*, 705 So. 2d 560, 564 (Fla. 1997); *Millette v. Tarnove*, 435 Fed. App'x 848, 851 (11th Cir. 2011) (intentional tortfeasors "cannot be apportioned fault under Fla. Stat. § 768.81(4)(b)"). As to the § 1983 claims against the PCSO Defendants (Counts I–VII), federal common law applies joint and several liability when defendants cause an indivisible injury. *Finch v. City of Vernon*, 877 F.2d 1497, 1502–03 (11th Cir. 1989).

52.    Defendants seeking to avoid joint and several liability bear the burden of proving a reasonable basis for apportionment exists. *McLeod v. American Motors Corp.*, 723 F.2d 830, 833 (11th Cir. 1984) (where injury is indivisible and apportionment is impossible, defendants are jointly and severally liable; burden of proving apportionment falls on defendants); *Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614

(2009). Because Plaintiff will assert that the damages are indivisible, they must be determined by a single factfinder in a single proceeding.

53. Reserving damages for a single jury trial allows the jury to hear all evidence, assess causation and damages across all claims and all Defendants, and properly allocate responsibility.

## IV. Rule 55(b)(2) Grants the Court Broad Discretion to Defer Damages.

54. As set forth in Section III above, Rule 55(b)(2) expressly authorizes the Court to conduct hearings or make referrals to determine the amount of damages, and preserves "any federal statutory right to a jury" in doing so. Fed. R. Civ. P. 55(b)(2)(B). Nothing in the Rule requires the Court to determine damages simultaneously with the entry of default judgment on liability.

55. Where, as here, Plaintiff has demanded a jury trial on all issues so triable (FAC ¶ 4), and the damages are unliquidated and factually complex, deferring the damages determination to the jury trial is consistent with the text of Rule 55(b)(2). Courts routinely bifurcate default judgments into liability and damages phases. *See Loos,* 684 F. Supp. 2d at 1332*; Miller v. Paradise of Port Richey, Inc.,* 75 F.Supp.2d 1342,1346 (M.D. Fla. 1999). This approach is particularly warranted where, as here, multiple defendants face related claims, the damages are indivisible and cannot be determined in a separate proceeding

### A.    Local Rule 1.10(c) Expressly Contemplates This Approach

56.    As set forth in Section III above, Local Rule 1.10(c) permits a party to identify unresolved issues — "such as the liability of another defendant" — in lieu of seeking immediate entry of default judgment. Plaintiff identifies the following unresolved issues that necessitate deferral of the damages award against Defendant Cadle: (1) The liability of the PCSO Defendants on Counts I through VII remains contested, with a pending Motion to Dismiss [ECF No. 39] and trial set for April 2027; (2) The damages sought against Defendant Cadle are causally intertwined and indivisible from the damages sought against the PCSO Defendants, as both sets of claims allege injury arising from the same course of sexual abuse and seek overlapping categories of relief; (3) A separate damages proceeding against Defendant Cadle in advance of trial would be contrary to preferred practice in multi-defendant cases and would not serve the interests of judicial economy; and (4) Reserving damages for the April 2027 jury trial will promote judicial economy by allowing a single proceeding to resolve all damages issues across all claims and all Defendants.

## V.    JUDICIAL ECONOMY REQUIRES A SINGLE PROCEEDING.

57.    A single proceeding to determine Plaintiff's damages alongside the jury trial on the § 1983 claims is the only approach that serves the interests of judicial economy. Empaneling one jury to assess damages against Defendant Cadle now and a different jury to assess damages against the PCSO

Defendants later — when both juries would be evaluating the same injuries, hearing the same evidence, and listening to the same witnesses — would be duplicative and wasteful of judicial resources. It would also require Plaintiff to testify about the details of her sexual abuse in multiple proceedings. A single jury trial in April 2027, at which all claims against all Defendants are tried together, avoids these problems and ensures that one factfinder evaluates the full scope of Plaintiff's harm and properly allocates responsibility among all Defendants.

## **CONCLUSION**

58.    For the foregoing reasons, Plaintiff in the instant action has demonstrated success on the merits based on the First Amended Complaint and accordingly a default judgment should be entered against Defendant Henry Cadle, with the Court reserving determination of damages pending a jury trial on the remaining claims.

**WHEREFORE**, Plaintiff Taylor Cadle, respectfully requests that this Honorable Court:

(a) Enter default judgment on liability only against Defendant Henry Cadle on Count VIII (Sexual Battery), Count IX (Intentional Infliction of Emotional Distress), and Count X (Invasion of Privacy);

(b) Reserve the determination of damages pending a jury trial of the remaining claims against the non-defaulting defendants; and

(c) Grant such other and further relief as the Court deems just and proper.

Dated: March 11, 2026                    Respectfully Submitted,

**/s/ Brenda Harkavy**
Brenda Harkavy, Esq. (SBN: 332405)
(*admission pro hac vice*)
M. Stewart Ryan, Esq. (SBN: 313516)
(*admission pro hac vice*)
AlexandriaMacMaster, Esq.
(SBN:316826)
(*admission pro hac vice*)
Laffey Bucci D'Andrea Reich & Ryan
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
P: 215-399-9255
bharkavy@laffeybucci.com
sryan@laffeybucci.com
amacmaster@laffeybucci.com
CVSRteam@laffeybucci.com

**/s/ Troy Rafferty**
Troy A. Rafferty, Esq. (SBN: #24120)
(*admission pro hac vice*)
Madeline E. Pendley, Esq.
(SBN:#1019746)
Rafferty, Domnick, Cunningham & Yaffa
815 S. Palafox St., 3rd Floor
Pensacola, FL 32502
P: 850-208-0826
troy@pbglaw.com
madeline@pbglaw.com

## CERTIFICATE OF SERVICE

I certify that on March 11, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record registered to receive electronic notifications.

Dated: March 11, 2026                    Respectfully submitted,

**/s/ Brenda Harkavy**
Brenda Harkavy, Esq. (SBN: 332405)
(*admission pro hac vice*)
Laffey Bucci D'Andrea Reich & Ryan
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
P: 215-399-9255
bharkavy@laffeybucci.com
CVSRteam@laffeybucci.com